IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CENTER FOR FOOD SAFETY; KAHEA; FRIENDS OF THE EARTH, INC., and PESTICIDE ACTION NETWORK NORTH AMERICA,<br><br>        Plaintiffs,<br><br>vs.<br><br>MIKE JOHANNS, Secretary, U.S. Department of Agriculture; WILLIAM T. HAWKS, Under Secretary of Agriculture for Marketing and Regulatory Programs; BOBBY R. ACORD, Deputy Administrator, U.S. Department of Agriculture, Animal and Plant Health Inspection Service and CINDY SMITH, Deputy Administrator, U.S. Department of Agriculture, Animal and Plant Health Inspection Service, Biotechnology Regulatory Services Program,<br><br>        Defendants.<br>_____ | ) CIV. NO. 03-00621 JMS/BMK<br>)<br>)<br>)<br>)<br>) ORDER DENYING DEFENDANTS'<br>) F.R.C.P. 59 MOTION TO AMEND<br>) JUDGMENT<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

ORDER DENYING DEFENDANTS' F.R.C.P. 59 MOTION TO AMEND
JUDGMENT

I.  INTRODUCTION

On August 31, 2006, the court entered an Amended Order Granting in

Part and Denying in Part Plaintiffs' Motion for Summary Judgment and Granting

in Part and Denying in Part Defendants' Motion for Summary Judgment ("Order"). On September 21, 2006, the Defendants filed a Motion to Amend Judgment pursuant to Rule 59 of the Federal Rules of Civil Procedure; the Plaintiffs filed an opposition to the motion on October 2, 2006, and the Defendants filed a reply on October 6, 2006. Based on the following, the Defendants' motion is DENIED.

## II.  STANDARD OF REVIEW

Rule 59(e) authorizes motions to amend judgment. Motions to amend judgment "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to entry of judgment." 11 Charles Alan Wright, Arthur Miller, & Mary Kay Kane, *Federal Practice & Procedure* § 2810.1 (2d ed. 1995) (footnotes omitted). "A motion for reconsideration under Rule 59(e) 'should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed *clear error*, or if there is an intervening change in the controlling law.'" *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999) (quoting *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)).

## III.  DISCUSSION

The Defendants argue that the court misinterpreted the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 et seq., in its Order. Specifically, the

Defendants argue that the court erred in ruling that the United States Department of Agriculture, Animal and Plant Health Inspection Service ("APHIS") was required to obtain a list of endangered and threatened species from the Secretary of the Interior or the Secretary of Commerce prior to engaging in agency action. (Hereinafter, the court will refer to the requirement that APHIS obtain a list of species as the "species list requirement.")  The court disagrees.

In *Forest Guardians v. Johanns*, 450 F.3d 455, 457-58 (9th Cir. 2006), the Ninth Circuit explained the procedural framework prescribed by the ESA:

> An agency's decision whether to take a discretionary action that may jeopardize endangered or threatened species is strictly governed by ESA-mandated inter-agency consultation procedures. [16 U.S.C.] § 1536(c);[1] *Thomas v. Peterson*, 753

---

[1] 16 U.S.C. § 1536 provides in relevant part:

(c) Biological assessment

(1) To facilitate compliance with the requirements of subsection (a)(2) of this section, *each Federal agency shall, with respect to any agency action of such agency for which no contract for construction has been entered into and for which no construction has begun on November 10, 1978, request of the Secretary [of the Interior or of Commerce] information whether any species which is listed or proposed to be listed may be present in the area of such proposed action.*  If the Secretary advises, based on the best scientific and commercial data available, that such species may be present, such agency shall conduct a biological assessment for the purpose of identifying any endangered species or threatened species which is likely to be affected by such action.  Such

(continued...)

F.2d 754, 764 (9th Cir. 1985) ("[T]he strict substantive provisions of the ESA justify more stringent enforcement of its procedural requirements, because the procedural requirements are designed to ensure compliance with the substantive provisions."). First, the agency contemplating the action must request information from the appropriate federal wildlife service regarding "whether any species which is listed or proposed to be listed may be present in the area of such proposed action." 16 U.S.C. § 1536(c)(1). . . . If the wildlife service determines that listed species may be present in the affected area, the agency preparing to act must produce a "biological assessment" in accordance with the National Environmental Policy Act "for the purpose of identifying any endangered species or threatened species which is likely to be affected by such action." *Id.* If the biological assessment concludes that listed species are in fact likely to be adversely affected, the agency ordinarily must enter "formal consultation" with the wildlife service. *Id.* § 1536(a)(2); *Thomas*, 753 F.2d at 763. Formal consultation requires the wildlife service to produce a "biological opinion" that evaluates the nature and extent of the proposed action's effect on the listed species and that, if necessary, posits reasonable and prudent alternatives to the proposed action. 16 U.S.C. § 1536(b)(3)(A); *Pac. Rivers Council v. Thomas*, 30 F.3d 1050, 1054 n. 8 (9th Cir. 1994).

---

[1](...continued)
assessment shall be completed within 180 days after the date on which initiated (or within such other period as is mutually agreed to by the Secretary and such agency, except that if a permit or license applicant is involved, the 180-day period may not be extended unless such agency provides the applicant, before the close of such period, with a written statement setting forth the estimated length of the proposed extension and the reasons therefor) and, before any contract for construction is entered into and before construction is begun with respect to such action. Such assessment may be undertaken as part of a Federal agency's compliance with the requirements of section 102 of the National Environmental Policy Act of 1969 (42 U.S.C. 4332).

(Emphasis added.)

> Following the issuance of a biological assessment which determines that listed species are likely to be adversely affected, the agency may, however, attempt to avoid the lengthy and costly process of formal consultation with the service by voluntarily initiating a less rigorous regulatory procedure called "informal consultation." 50 C.F.R. § 402.13.
>
>> Informal consultation is an optional process that includes all discussions, correspondence, etc., between the [Fish and Wildlife] Service and the Federal agency ⋯ designed to assist the Federal agency in determining whether formal consultation or a conference is required. If during informal consultation it is determined by the Federal agency, with the written concurrence of the [Fish and Wildlife] Service, that the action is not likely to adversely affect listed species or critical habitat, the consultation process is terminated, and no further action is necessary.
>
> *Id.* § 402.13(a). In other words, regardless of whether a biological assessment concludes that a proposed action would likely adversely affect listed species, if informal consultation is initiated and results in a finding that the proposed action would not in fact have such an effect, the agency is not required to engage in formal consultation. *Id.* § 402.14.

(Footnotes omitted.) (First alteration added; remaining alterations in original.)

The ESA is not entirely linear, however, and there is another, parallel branch to the ESA decision tree. As the Eleventh Circuit has explained:

> According to the implementing regulations, a [Biological Assessment, or "BA"] is also required for all federal actions which constitute a "major construction activity," whether or not a listed species is suspected in the area. 50 C.F.R. § 402.12(b)(1). A "major construction activity" is defined as "a construction project (or other undertaking having similar physical impacts) which is a major Federal action significantly

> affecting the quality of the human environment as referred to in [NEPA, 42 U.S.C. § 4332(2)(C) ]." 50 C.F.R. § 402.02. The term "major" reinforces the term "significantly," but has no meaning independent of it. *Andrus v. Sierra Club*, 442 U.S. 347, 364 n. 23, 99 S.Ct. 2335, 2344 n. 23, 60 L.Ed.2d 943 (1979); 40 C.F.R. § 1508.18. The regulations promulgated to institute NEPA also specifically provide that "major" actions include approving permits for construction. 40 C.F.R. § 1508.18(b)(4).
>
> If the BA reveals no potential jeopardy to a listed species, and FWS either agrees or proposes alternatives which would eliminate any jeopardy it perceives, the project may proceed. 50 C.F.R. § 402.12(k)(1). . . .
>
> If, on the other hand, the BA does reveal a potential impact on a listed species, the agency must initiate "formal consultation" with FWS. 50 C.F.R. § 402.14. Formal consultation requires FWS to review the available data and evidence, evaluate the status of the species and the potential effects of the agency action, and formulate a biological opinion, which states whether the action and its cumulative effects is likely to jeopardize the continued existence of the species.

*Sierra Club v. U.S. Army Corps of Engineers*, 295 F.3d 1209, 1213-14 (11th Cir. 2002) (second alteration in original).

In other words, an agency proposing an action must first determine if its action constitutes "major construction activity" (as defined in 50 C.F.R. § 402.02). If the agency determines that its proposed action is "major construction activity," then the agency *must* prepare a BA. If the agency determines that its proposed action is not "major construction activity," then the agency must

6

determine, in the first instance, whether a BA is required. The agency must follow certain steps in making this decision. "First, the agency contemplating the action must request information from the appropriate federal wildlife service regarding 'whether any species which is listed or proposed to be listed may be present in the area of such proposed action.'" *Forest Guardians*, 450 F.3d at 457 (quoting 16 U.S.C. § 1536(c)(1)). Second, if FWS or NMFS informs the agency that listed species may be present in the area of the proposed agency action, the agency must prepare a BA; if no listed species or critical habitats are present, then no BA is necessary. *Id.*

In its Order, the court ruled that "whenever an agency is considering taking an 'action,' that agency must request a list, from either the United States Fish and Wildlife Service ('FWS') or the National Marine Fisheries Service ('NMFS'), of those endangered and threatened species present in the geographic area of the proposed action." Order at 8-9. The court based its conclusion on the plain language of 16 U.S.C. § 1536(c)(1) and the Ninth Circuit's decision in *Forest Guardians*, 450 F.3d 455.

The Defendants argue that the court erred in its interpretation of § 1536(c)(1), and they base their argument on the statutory text, the implementing regulations, and caselaw. As to each of these arguments, the court disagrees.

A.  Statutory text

The Defendants have two interrelated textual arguments. They first argue that the text of § 1536(c)(1) does not require APHIS to obtain a species list from FWS or NMFS before issuing permits. They contend that § 1536(c)(1) only applies to those cases in which an agency is required to prepare a biological assessment ("BA") and that a BA is only required when the agency action is a "major construction activity." Because the permits at issue in the instant case do not constitute "major construction activity," the Defendants argue, APHIS was not required to comply with § 1536(c)(1).[2]

The court understands, but disagrees with, the Defendants' argument. Part of the confusion in this case appears to arise from the structure of § 1536. Section 1536(c) is entitled "Biological assessment" and sets forth procedural requirements for conducting a BA. The Defendants appear to believe that the procedures mandated within this section only apply where a biological assessment

---

[2] The Plaintiffs argue that the court should deny the Defendants' motion based on the fact that the Defendants did not raise this argument in their summary judgment briefs or during oral arguments regarding the motions for summary judgment. The Plaintiffs are correct that the Defendants did not raise this argument in a timely manner; the first time the Defendants raised this argument was in their brief discussing the proper remedies for the ESA and NEPA (National Environmental Policy Act) violations outlined in the court's August 10, 2006 Order. The Defendants should have raised this issue long ago, rather than waiting until such a late stage to bring new arguments. Nevertheless, the court will consider the merits of the Defendants' motion.

is required. The first sentence of § 1536(c)(1), however, mandates a specific procedure (the species list requirement) that an agency must follow *before* conducting a BA to facilitate compliance with § 1536(a)(2).[3] The species list requirement is *not* part of the BA process. Section 1536(c)(1), *after* setting forth the species list requirement, states: "If the Secretary advises, based on the best scientific and commercial data available, that such species may be present, such agency shall conduct a biological assessment for the purpose of identifying any endangered species or threatened species which is likely to be affected by such action." Thus, the statutory text makes clear that the species list requirement is *not* part of the BA process; instead, it is an initial and preliminary step to determine whether a BA is required. Although Congress could have structured this statute differently (by putting the species list requirement earlier in the statute and/or by placing this requirement somewhere other than under the heading "Biological

---

[3] 16 U.S.C. § 1536(a)(2) provides:

> Each Federal agency shall, in consultation with and with the assistance of the Secretary, insure that any action authorized, funded, or carried out by such agency (hereinafter in this section referred to as an "agency action") is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species which is determined by the Secretary, after consultation as appropriate with affected States, to be critical, unless such agency has been granted an exemption for such action by the Committee pursuant to subsection (h) of this section. In fulfilling the requirements of this paragraph each agency shall use the best scientific and commercial data available.

assessment"), it chose not to do so. This structural quirk does not detract from the plain language of the statute.[4]

The Defendants raise an additional, related argument based on the statutory text: they contend that the species list requirement itself only applies in cases involving "construction action." Motion at 5 n.2. As support for their argument, the Defendants point to the text of § 1536(c)(1), which states that "each Federal agency shall, with respect to any agency action of such agency for which no contract for construction has been entered into and for which no construction

---

[4] The Defendants also point to 51 Fed. Reg. 19926, 19946 (June 3, 1986), in support of their argument that the species list requirement only applies to major construction activities. This document states in relevant part:

> The biological assessment process begins when a Federal agency decides that its action is a major construction activity, as discussed in these regulations, or it decides that it will voluntarily prepare a biological assessment. The Federal agency or the designated non-Federal representative requests information on whether listed or proposed species or designated or proposed critical habitat may be present in the action area. Within 30 days of receipt of that inquiry, the Director will respond with a list of any such species and critical habitat that may be present . . . .

The Defendants do not explain how this document supports their position, but the court assumes that the Defendants are relying on this document to demonstrate that an agency requests a species list when conducting a BA (and not before).
   Again, the court disagrees. This document explains the BA process, and the court does not dispute that a species list is required for major construction activities. The fact that a species list is required for major construction activities, however, does not mean that a species list is *not* required for other agency actions -- again, because Congress has stated that a species list is required for "any agency action." 16 U.S.C. § 1536(c)(1). Once again, the court is simply following the plain language of § 1536(c)(1) in concluding that a species list is required even where a biological assessment is not.

has begun on November 10, 1978, request [information on endangered/threatened species that] may be present in the area of such proposed action." The Defendants argue that the words "such proposed action" refer to construction activities and that everything within § 1536 and its implementing regulations is focused on "major construction activity." The Defendants also point to some legislative history that they claim supports their position.

The Defendants suggest that only "construction actions" can qualify as "major construction activity," that a BA is only required for "major construction activity," and that a species list is only required when a BA is prepared. Each of these premises is false. First, the ESA and its implementing regulations refer to "major construction activities," but this phrase is defined as "a construction project (*or other undertaking having similar physical impacts*) which is a major Federal action significantly affecting the quality of the human environment as referred to in the National Environmental Policy Act." 50 C.F.R. § 402.02 (emphasis added). Thus, the ESA is not limited solely to situations in which an agency is building something (or is allowing something to be built), but rather has a broader scope. Second, a BA is required any time FWS or NMFS concludes that endangered or threatened species "may be present" in the area of the proposed agency action; this requirement exists to ensure that "any action authorized, funded, or carried out by

11

such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species[.]" 16 U.S.C. § 1536(a)(2).  Third, as discussed *supra*, a species list is required not only when a BA is prepared, but also for "any agency action," meaning "any action authorized, funded, or carried out by" an agency.  *Id.*; 16 U.S.C. § 1536(c)(1).

          In the instant case, whether issuance of open-air field test permits is "major construction activity" is not before the court; the only question currently before the court is whether issuance of the permits is "agency action" so as to trigger the species list requirement of § 1536(c)(1).  The answer to that question is "yes."  Again, § 1536(c)(1) requires an agency to request a species list for "*any* agency action" so long as that action satisfies two requirements:  (1) as of November 10, 1978, the agency had not entered into a contract for construction; and (2) as of November 10, 1978, no construction had begun on the agency contract.  These limitations appear to be designed to resolve any ambiguities regarding the retroactive application of § 1536; the limitations do not undercut the statute's textual requirement that an agency obtain a species list for "any agency action."

B.  Regulations

The Defendants' second argument rests on the ESA's implementing regulations. The Defendants point to 50 C.F.R. § 402.12(b)[5] and posit that this regulation "make[s] clear that an agency is not required to prepare a biological assessment unless the action is a major construction activity within the meaning of NEPA." Defendants' Motion at 4.

Again, the court disagrees. The Defendants' argument rests on the assumption that the species list requirement only applies when an agency is obligated to conduct a BA. Even if the Defendants are correct that a BA is not (or was not) required to issue open-air field test permits (such that the procedures set

---

[5] 50 C.F.R. § 402.12 (entitled "Biological assessments") provides in relevant part:

(a) *Purpose*. A biological assessment shall evaluate the potential effects of the action on listed and proposed species and designated and proposed critical habitat and determine whether any such species or habitat are likely to be adversely affected by the action and is used in determining whether formal consultation or a conference is necessary.

(b) *Preparation requirement*. (1) The procedures of this section are required for Federal actions that are "major construction activities"; provided that a contract for construction was not entered into or actual construction was not begun on or before November 10, 1978. Any person, including those who may wish to apply for an exemption from section 7(a)(2) of the Act, may prepare a biological assessment under the supervision of the Federal agency and in cooperation with the Service consistent with the procedures and requirements of this section. An exemption from the requirements of section 7(a)(2) is not permanent unless a biological assessment has been prepared.
    (2) The biological assessment shall be completed before any contract for construction is entered into and before construction is begun.

13

forth in 50 C.F.R. § 402.12 are not applicable), APHIS cannot escape the plain language of § 1536(c)(1).

The Defendants also rely on § 402.12 for the argument, discussed *supra*, that all the requirements of § 1536(c)(1) -- including the species list requirement -- apply only in cases involving "major construction activities." Again, the court disagrees. The procedures mandated in § 402.12 are required for major construction activities; this does not mean, however, that the species list requirement is not applicable to "*any* agency action," *i.e.*, "any action authorized, funded, or carried out by" an agency. 16 U.S.C. §§ 1536(a)(2), 1536(c)(1). In short, that the regulation mandates a BA for major construction activities does not limit the law's plain requirement that "each Federal agency shall . . . request of the Secretary [of the Interior or of Commerce] information whether any species which is listed or proposed to be listed may be present in the area of such proposed action." 16 U.S.C. § 1536(c)(1).

In addition, the Defendants point to another regulation -- 50 C.F.R. § 402.14 -- for the proposition that "an agency proposing an action must first determine whether the action 'may affect' species listed as threatened or endangered under the ESA." Defendants' Reply at 4. This argument is without merit. Section 402.14 provides in relevant part: "Each Federal agency shall

review its actions at the earliest possible time to determine whether any action may affect listed species or critical habitat. If such a determination is made, formal consultation is required[.]" Nevertheless, the regulation also provides that "[f]ormal consultation shall not be initiated by the Federal agency until any required biological assessment has been completed and submitted to the Director in accordance with § 402.12." Thus, § 402.14 discusses the procedures that *follow* a biological assessment. As discussed *supra*, the species list requirement *precedes* the BA process.

C.     Case law

Finally, the Defendants offer several cases that they say support their argument. The cases cited by the Defendants support the proposition that a BA is only required for cases involving "major construction activities."

In support of their argument, the Defendants claim that "every court to address the issue has held that ESA section 7(c) [16 U.S.C. § 1536(c)] does not require a BA unless a major construction activity is involved." Defendants' Motion at 4 (citing four cases).[6]  Again, the Defendants are missing the mark. The

---

[6] For example, Defendants cite *Newton County Wildlife Association v. Rogers*, 141 F.3d 803 (8th Cir. 1998), to support their argument that, pursuant to § 402.12, the ESA does not require a BA unless a major construction activity is involved. On its face, this statement is true: a BA is only *required* -- that is, a BA is *always mandatory* -- when a major construction activity is involved. *Rogers* holds nothing more; the *Rogers* court simply does not discuss the

(continued...)


issue is not whether a BA is required; the issue is whether a species list is required.

As the Ninth Circuit explained:

> An agency's decision whether to take a discretionary action that may jeopardize endangered or threatened species is strictly governed by ESA-mandated inter-agency consultation procedures. First, the agency contemplating the action must request information from the appropriate federal wildlife service regarding "whether any species which is listed or proposed to be listed may be present in the area of such proposed action."

*Forest Guardians v. Johanns*, 450 F.3d 455, 457 (9th Cir. 2006) (quoting 16 U.S.C. § 1536(c)(1)) (citations omitted).

In short, the court affirms its previous conclusion that APHIS was required to obtain a species list *even if it was not required to prepare a BA*. The Defendants have not provided the court with any statutes, regulations, or cases to suggest that the court's initial conclusion is incorrect (let alone that the court's initial conclusion was clearly erroneous so as to warrant reversal pursuant to Rule 59).

---

[6](...continued)
process for actions that do not involve major construction activity. That a BA is required for major construction activity does not address the process to be followed outside the context of major construction activity. Regardless of whether an agency action constitutes "major construction activity," and regardless of whether a BA is required, the ESA mandates that an agency obtain a species list from FWS or NMFS.

## IV. CONCLUSION

Based on the foregoing, the court DENIES the Defendants' F.R.C.P. 59 Motion to Amend Judgment.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 11, 2006.

/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Center for Food Safety et al. v. Johanns et al.*, Civil No. 03-00621 JMS/LEK; Order Denying Defendants' F.R.C.P. 59 Motion to Amend Judgment