IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CENTER FOR FOOD SAFETY; KAHEA; FRIENDS OF THE EARTH, INC.; and PESTICIDE ACTION NETWORK NORTH AMERICA,<br><br>              Plaintiffs,<br><br>       vs.<br><br>MIKE JOHANNS, Secretary, U.S. Department of Agriculture; WILLIAM T. HAWKS, Under Secretary of Agriculture for Marketing and Regulatory Programs; BOBBY R. ACCORD, Deputy Administrator, U.S. Department of Agriculture, Animal and Plant Health Inspection Service; and CINDY SMITH, Deputy Administrator, U.S. Department of Agriculture, Animal and Plant Health Inspection Service, Biotechnology Regulatory Services Program,<br><br>              Defendants,<br><br>       and<br><br>BIOTECHNOLOGY INDUSTRY ORGANIZATION,<br><br>              Intervenor.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CV. NO. 03-00621 JMS-BMK<br><br>SPECIAL MASTER'S REPORT RECOMMENDING THAT PLAINTIFFS' MOTION FOR ATTORNEY'S FEES BE GRANTED IN PART AND DENIED IN PART |

**SPECIAL MASTER'S REPORT RECOMMENDING THAT PLAINTIFFS'
MOTION FOR ATTORNEY'S FEES BE GRANTED IN PART AND
<u>DENIED IN PART</u>**

Plaintiffs' Motion for Attorney's Fees has been designated to this

Court as Special Master.  After careful consideration of the motion, the supporting

and opposing memoranda, and the attached documentation, the Special Master

FINDS & RECOMMENDS that Plaintiffs' motion be GRANTED IN PART and

DENIED IN PART.  Specifically, the Special Master FINDS that Plaintiffs are

entitled to attorney's fees, costs, and other expenses under both the Equal Access

to Justice Act ("EAJA"), 28 U.S.C. § 2412, and the Endangered Species Act

("ESA"), 16 U.S.C. §§ 1531-34, and RECOMMENDS that Plaintiffs be awarded

attorney's fees in the amount of $487,281.44 and costs and other expenses in the

amount of $12,646.29.

## <u>PROCEDURAL HISTORY</u>

Plaintiffs in this action are four nonprofit organizations: Center for

Food Safety, Kahea, Friends of the Earth, and Pesticide Action Network North

America (collectively, "Plaintiffs").  Plaintiffs share the goal of protecting both the

natural environment and the public from any dangers that might be associated with

genetically engineered foods.  In November of 2003, Plaintiffs filed an action

against the officials in charge of the United States Department of Agriculture's

2

Animal and Plant Health Inspection Service ("APHIS" or "Defendants").

Plaintiffs requested declaratory judgment and injunctive relief regarding permits

the agency had issued to four companies, ProdiGene, Monsanto, Hawaii

Agricultural Research Center, and Garst Seed.  These APHIS permits authorized

the four companies to conduct field tests with genetically engineered

pharmaceutical-producing plant varieties ("GEPPV") between 2001 and 2003.

Plaintiffs stated eleven claims for relief against APHIS.  Claims 1-4

alleged violations of the National Environmental Policy Act ("NEPA"), 42 U.S.C.

§§ 4321-70, and the Administrative Procedure Act ("APA"), 5 U. S. C. § 702, for

APHIS's failure to prepare either an Environmental Assessment or a

Environmental Impact Study for each of the four permits they issued.  Claims 6-9

alleged violations of § 7(a)(2) of the ESA for Aphis's failure to prepare a

biological assessment for each of the four permits they issued.  Claim 5 alleged

that a nationwide GEPPV program existed and that APHIS had violated NEPA and

the APA by failing to perform a programmatic Environmental Impact Statement.

Claim 10 similarly alleged that a nationwide GEPPV program existed and that this

nationwide program violated § 7(a)(2) of the ESA.  Finally, Plaintiffs' Claim 11

alleged that APHIS had failed to properly promulgate rules for GEPPV permitting

pursuant to its authority to do so under the Plant Protection Act ("PPA"), 7 U.S.C.

3

§§ 7701-86.  For each of these eleven claims, Plaintiffs requested both declaratory judgments and injunctive relief.

Although the GEPPV field tests terminated shortly after Plaintiffs filed suit, the Court ruled that Plaintiffs' claims were not moot because "the record evidences a probability that the challenged action will affect Plaintiffs in the future."  (Order Denying Defendants' Motion to Dismiss on Grounds of Intervening Mootness 16, filed March 29, 2005).

In September of 2006, the Court ruled on the merits of Plaintiffs' claims.  The Court granted Plaintiffs summary judgment on Claims 1-4 and Claims 6-9, and denied summary judgment on Claims 5, 10, and 11.  The Court awarded Plaintiffs the declaratory judgments they sought on the eight claims on which they prevailed, but found that there was "no reason" to issue the injunctive relief Plaintiffs sought because all of the permits at issue had expired and APHIS, like all government agencies, is already required to comply with NEPA, the ESA, and the APA.  (Amended Order Granting in Part and Denying in Part Plaintiffs' Motion for Summary Judgment 64, filed August 31, 2006 (hereinafter "Amended Order").)

Plaintiffs now seek attorney's fees and other costs under the EAJA and the ESA.

4

# RELEVANT LAW

The Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, mandates

that courts "*shall* award to a prevailing party other than the United States fees and

other expenses . . . incurred by that party in any civil action . . . including

proceedings for judicial review of agency action, brought by or against the United

States in any court having jurisdiction of that action . . . ." 28 U.S.C. §

2412(d)(1)(A) (emphasis added).  A "prevailing party" is one that "succeeds on

any significant issue even though the other issues are unreached, remanded, or

prove unsuccessful." Nat'l Wildlife Fed'n v. Fed. Energy Regulatory Comm'n,

870 F.2d 542, 544 (9th Cir. 1989).   A party succeeds on a significant issue where

"actual relief on the merits of his claim materially alters the legal relationship

between the parties by modifying the defendant's behavior in a way that directly

benefits the plaintiff." Farrar v. Hobby, 506 U.S. 103, 111-12 (1992).

A party who seeks and receives a declaratory judgment can be

considered a prevailing party. Animal Lovers Volunteer Ass'n, Inc. v. Carlucci,

867 F.2d 1224, 1225 (9th Cir. 1989) (finding that plaintiffs who succeeded on the

merits of their declaratory judgment claim were prevailing parties).  Where the

declaratory judgment does not alter the legal relationship between the parties,

however, the party that has been awarded a declaratory judgment may not be a

5

prevailing party.  <u>Rhodes v. Stewart</u>, 488 U.S. 1, 4 (1988) (finding that a party whose case was moot prior to the issuance of the declaratory judgment was not a prevailing party).

Even a prevailing party may not recover attorney's fees under the EAJA where the United States' position was "substantially justified."  28 U.S.C. § 2412(d)(1)(A).  The United States' position is substantially justified where both "the action[s] on which the civil litigation is based" as well as "the positions the government takes during the litigation" have a "'reasonable basis both in law and fact.'"  <u>Meinhold v. United States Dep't of Def.</u>, 123 F.3d 1275, 1277-78 (9th Cir. 1997) (quoting <u>United States v. Rubin</u>, 97 F.3d 373, 375 (9th Cir. 1996)).  The United States' position is not substantially justified, however, where "the government's position violates the Constitution, a statute, or its own regulations," unless the regulation it violated was "ambiguous, complex, or required exceptional analysis."  <u>Meinhold</u>, 123 F.3d at 1278.

The court  need not determine whether each particular phase of the government's case was substantially justified; rather, "[t]he single finding that the Government's position lacks substantial justification, like the determination that a claimant is a 'prevailing party,' . . . operates as a one-time threshold for fee eligibility."  <u>Commissioner, I.N.S v. Jean</u>, 496 U.S. 154, 160 (1990).  While the

6

Court must look at both the underlying action and the litigation in determining whether the government's position was substantially justified, "litigation position does not establish substantial justification in the face of a clearly unjustified underlying action." United States v. Marolf, 277 F.3d 1156, 1163-64 (9th Cir. 2002). The United States bears the burden of proving substantial justification. Scarborough v. Principi, 541 U.S. 401, 414 (2004).

Attorney's fees not recoverable under the EAJA may sometimes be recovered under the Endangered Species Act. The ESA provides that courts "may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate." 16 U.S.C. § 1504(g)(4). The statute's "whenever . . . appropriate" language was meant to "expand the class of parties eligible for fee awards from prevailing parties to *partially prevailing* parties – parties achieving *some success*, even if not major success." Ruckelshaus v. Sierra Club, 463 U.S. 680, 688 (1983) (emphasis in original) (construing identical language in Clean Water Act); Assoc. of California Water Agencies v. Evans, 386 F.3d 879, 884 (9th Cir. 2004) (explicitly applying Ruckelshaus to the ESA).

## DISCUSSION

I. FEE ELIGIBILITY

Plaintiffs claim fees under two distinct statutory regimes: the Endangered Species Act and the Equal Access to Justice Act.  The Special Master FINDS that Plaintiffs are eligible for fees under both statutory frameworks.

A.  Equal Access to Justice Act

Plaintiffs first request fees under the Equal Access to Justice Act. Under the EAJA, a  prevailing party must be awarded attorney's fees unless the government's position was substantially justified.  28 U.S.C. § 2412(d)(1)(A). Here, the Special Master FINDS (1) that Plaintiffs were prevailing parties, and (2) that the government's position was not substantially justified.

1.  Prevailing Party

Plaintiffs here are prevailing parties.  They sought and obtained a declaratory judgment in their favor on eight of their eleven claims.  This declaratory judgment "materially alter[ed] the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff," Farrar, 506 U.S. at 111-12.  Specifically, APHIS must now modify its permitting practices in Hawaii in certain ways to conform with some of the interpretations of the ESA and NEPA advocated by Plaintiffs; it cannot continue to

8

follow the interpretations it espoused throughout the course of this litigation.

Defendants argue that Plaintiffs cannot be prevailing parties because "their declaratory judgments both did not and could not affect a scintilla of the previously completed APHIS field tests opposed in 'Counts One through Four and Six through Nine,' the particular claims specific to the four expired Hawaii permits on which plaintiffs did prevail."  (Defs.' Mem. Opp. to Mot. 14).  Defendants rely heavily upon Rhodes, where defendants who won declaratory judgments were not considered prevailing parties because one of them was deceased and the other was no longer in prison or on probation.[1]  488 U.S. at 4.   Defendants argue that this is the precise situation here: that because the field tests have been completed, the legal relationship between the parties was not materially altered by the declaratory

---

[1] Defendants' reliance on other cases is misplaced.

In Animal Lovers Ass'n, the Ninth Circuit did not hold that a declaratory judgment provided a basis for recovering attorney's fees "because that relief still could change *ongoing* agency action still before the court," as Defendants claim, (Defs.' Mem. Opp. to Mot. for Attorney's Fees 9-10 (emphasis in original)).  Rather the Ninth Circuit held that plaintiffs were prevailing parties because they "easily satisfy [Hensley's] standard" of "succeed[ing] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  Animal Lovers Ass'n, 867 F.2d at 1225 (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).

Similarly, in National Wildlife Fed'n, the Ninth Circuit did not blindly find "that declaratory relief is 'insufficient to establish [plaintiffs] as 'prevailing parties' under EAJA,'" (Defs.' Mem. Opp. to Mot. for Attorney's Fees 10 (emphasis in original)).  Rather, the Ninth Circuit held that attorney's fees were not available where there the case was remanded without a decision on the merits as to "whether the FPA required the comprehensive plan and coordinated study process the [plaintiffs] sought.  National Wildlife Fed'n, 870 F.2d at 545.  Here, of course, the Court did find that federal law requires some of the assessment and study processes the Plaintiffs sought for GEPPV permitting.

judgments.

The circumstances in <u>Rhodes</u> were very different than those here, however.  In <u>Rhodes</u>, the changed status of the plaintiffs made them no longer have an interest in the outcome of the case.  <u>See</u> 488 U.S. at 4.   Here, on the contrary, the four Plaintiffs maintain an active interest in assuring APHIS's compliance with the ESA and NEPA as Plaintiffs interpret those statutes.  In denying AHPHIS's motion to dismiss for mootness, the Court explicitly ruled that it was "likely that such testing [of GEPPVs] will continue under the circumstances to which Plaintiffs object."  (Order Denying Defendants' Motion to Dismiss on Grounds of Intervening Mootness 16, filed March 29, 2005; <u>see</u> <u>also</u> Order Denying Renewed Motion to Dismiss 21, filed July 18, 2005, at 21 (quoting Defendants' statements that "it is a certainty that the locations previously used for GEPPVs will be used in the near future for other field trials").)

Ultimately, Plaintiffs' position was vindicated.  Although the Court did not issue an injunction because "there [was] no ongoing or pending agency action to enjoin,"(Amended Order 64), the legal relationship between the parties changed.  APHIS must now comply with these statutes, at least in part, in the manner which Plaintiffs requested APHIS comply with them.  This is a material alteration in the legal relationship between Plaintiffs and Defendants that gives

Plaintiffs prevailing party status under the EAJA.

### 2. Substantially Justified

Defendants contend that even if Plaintiffs are prevailing parties, Defendants' mootness, standing, and confidentiality positions were substantially justified, and that as a result, Plaintiffs' fee request should be entirely or partially dismissed. The burden of showing their substantial justification is on Defendants, however, and they fail to meet this burden.

Defendants urge the Court to examine three separate phases of the litigation and make separate substantial justification findings for each phase. This methodology, however, is contrary to the purpose of the substantial justification provision, which is meant to operate "as a one-time threshold for fee eligibility," Jean, 496 U.S. at 160. Moreover, even a substantially justified litigation position as a whole "does not establish substantial justification in the face of a clearly unjustified underlying action." Marolf, 277 F.3d at 1163-64; see also Wilderness Soc'y v. Babbitt, 5 F.3d 383, 388-89 (9th Cir. 1993) (finding that the government was not substantially justified even though the government presented a reasonable ripeness defense during litigation).

Here, while Defendants may have taken individually reasonable positions with respect to mootness, standing, and confidentiality, they have not

shown that their overall litigation position was reasonable.  Even if Defendants'

litigation position was reasonable, however, the underlying agency actions were

not reasonable.  The Court found that APHIS's "utter disregard for this simple

investigation requirement [of the ESA]" to be "an unequivocal violation of a clear

congressional mandate."  (Amended Order 31.)  Defendants have not met their

burden of showing the reasonableness of either their litigation position or the

underlying agency action.  Therefore, Defendants' position was not substantially

justified and Plaintiffs are entitled to fees and expenses as prevailing parties under

the EAJA.

> B. <u>Endangered Species Act</u>

Plaintiffs are also eligible for attorney's fees under the Endangered

Species Act.  Five of Plaintiffs claims alleged violations of the ESA and Plaintiffs

were awarded declaratory judgments on four of these five claims.  They now

request attorney's fees for their success on those claims under 16 U.S.C. §

1504(g)(4).  The Special Master FINDS that Plaintiffs are entitled to recover

attorney's fees for their ESA claims because in achieving at least "some success"

on those claims, <u>Ruckelshaus</u>, 463 U.S. at 688, Plaintiffs have met the

requirements of 16 U.S.C. § 1504(g)(4).

II.  ATTORNEY'S FEES AWARD

Plaintiffs are eligible to recover fees and expenses from the United States under both the ESA and the EAJA.  Because Plaintiffs suggest no distinct alternative fee award for their ESA claims, the Special Master recommends that the Court apply the EAJA standards to determine Plaintiffs' entire fee award.  Under the EAJA, the "fees and other expenses" to which prevailing parties are entitled include "reasonable attorney's fees."  28 U.S.C. § 2412; see also Sorenson v. Mink, 239 F.3d 1140, 1145 (9th Cir. 2001).

Plaintiffs' fee award is calculated in three steps.  First, the proper rates are determined; second, this rate is multiplied by the number of hours reasonably expended in the litigation; and third, this base fee award is then be further adjusted to account for Plaintiffs' degree of success in the litigation.  This process yields a total recommended attorney's fee award of **$487,281.44**.

A.  Hourly Rate

Under the EAJA, fees are to be "based upon prevailing market rates for the kind and quality of the services furnished, except that . . . attorney fees shall not be awarded in excess of $125 per hour."  28 U.S.C. § 2412(d)(2)(A).  The statutory rate may be exceeded only where "the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified

13

attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. §

2412(d)(2)(A). The cost-of-living adjusted statutory rate for Honolulu for the

lawsuit in question is $143 per hour.[2]

Additionally, in the Ninth Circuit, special factors justifying a higher

fee exist where (1) the attorney possesses "distinctive knowledge and skills

developed through a practice specialty," (2) those distinctive skills are "needed in

the litigation," and (3) those skills are "not . . . available elsewhere at the statutory

rate." Love v. Reilly, 924 F.2d 1492, 1496 (9th Cir. 1991); see also Pierce v.

Underwood, 487 U.S. 552, 572 (1988). Environmental litigation is "an identifiable

practice specialty that requires distinctive knowledge" for the purposes of EAJA

fee determinations. Love, 924 F.2d at 1496.

---

[2] Plaintiffs contend that the adjusted statutory rate for Honolulu is $151 per hour. (Pls.' Mem. Supp. Mot. for Attorneys' Fees, Achitoff Decl. at ¶ 7.) Plaintiffs base this rate off of a 21 percent increase in the Honolulu Consumer Price Index ("CPI") between the year the statutory rate was amended in 1996 and the Honolulu CPI for the first half of 2006.

The proper method for computing the inflation-adjusted EAJA rate, however, is to increase the statutory rate by the percentage increase in the CPI between the date of amendment and the CPI "that is current in the year when the fee is earned," not the CPI calculated as of date of judgment. Sorenson, 239 F.3d at 1147. Here, Plaintiffs' claim was filed in November of 2003 and judgment was entered in September, 2006. For ease of calculation, the Special Master assumes that 1/6 of Plaintiffs' fees were earned in the second half of 2003, that 1/3 of Plaintiffs' fees were earned in 2004, that 1/3 of Plaintiffs' fees were earned in 2005, and that 1/6 of Plaintiffs' fees were earned in the first half of 2006.

Based on the Honolulu CPI table attached as Plaintiffs' Exhibit 7, the Special Master calculates that the average CPI for the time period over which fees were earned in this case was 194.8. This is calculated as follows: (185.7)(1/6) + (190.6)(1/3) + (197.8)(1/3) + (206.4)(1/6) = 194.8. This yields a 14.1% increase in the CPI between the date of amendment in 1996 and the time when fees were earned in this case. Increasing the statutory rate of $125/hour by 14.1% yields an inflation-adjusted EAJA statutory rate of **$143/hour** for this litigation.

Plaintiffs here request the following rates: $250/hour for Mr. Achitoff,

$220/hour for Mr. Henkin, $160/hour for Mr. Morikawe and Ms. Sproat,

$405/hour for Mr. Jenkins, $360/hour for Mr. Mendelson, and $85/hour for the

work performed by their five law clerks.  In support of these rates, Plaintiffs

produce two declarations, one by Mr. Achitoff and one by Honolulu attorney

James Paul.

Mr. Achitoff declares that he has been litigating environmental cases

exclusively for the last 12 years, and that Mr. Morikawe also practices

environmental law exclusively.  He declares that Mr. Jenkins and Mr. Mendelson

practice in Washinton, D.C., and that he is "not aware of any attorney in Hawaìi

with previous experience and expertise litigating issues concerning agricultural

biotechnology."  (Pls.' Mem. Supp. Mot. for Attorneys' Fees, Achitoff Decl. ¶ 5.)

Mr. Achitoff also references the attached "Laffey Matrix," which he claims is

"used by federal courts in the District of Columbia to determine appropriate rates

for attorneys in that district seeking fee awards" based on number of  years of

practice.    (Pls.' Mem. Supp. Mot. for Attorneys' Fees, Achitoff Decl. ¶ 5; see also

Mem. Supp. Mot. for Attorneys' Fees, Ex. 6.)  The awards sought for Mr. Jenkins

and Mr. Mendelson are derived from this matrix.

Mr. Paul declares that he has personal knowledge of Mr. Achitoff's

skills and of the legal community in Hawaii.  Mr. Paul believes that Mr. Achitoff's

reputation is "excellent, particularly as an attorney litigating environmental issues."

(Pls.' Reply Mem., Paul Decl. ¶ 3.)  Mr. Paul also declares that "[t]he rates

attorneys in Hawai'i with experience and reputation comparable to Mr. Achitoff's

are at least as high as the rate of $250 per hour being requested in this case for Mr.

Achitoff's time, and often are higher."  (Pls.' Reply Mem., Paul Decl. ¶ 4.)

Finally, Mr. Paul declares that he has "some familiarity" with the skills and

reputations of Mr. Morikawe, Ms. Sproat, and Mr. Henkin," and that the rates they

are requesting in this case "all are at or below market rates for attorneys of

comparable experience and reputation."  (Pls.' Reply Mem., Paul Decl. ¶ 5.)

        With these two declarations, and with the attached resumes, Plaintiffs

have sufficiently shown that Mr. Achitoff, Mr. Morikawe, Mr. Jenkins, and Mr.

Mendelson all possess "distinctive knowledge and skills developed through a

practice specialty," Love, 842 F.2d at 1496.  Furthermore, the Special Master

accepts Plaintiffs' evidence that the rates charged by each of these attorneys are at

or below market rates   However, Plaintiffs have failed to adequately meet either

the second or third requirements of Love.

        Plaintiffs first fail to show that their attorneys' distinctive skills were

"needed in the litigation," id.  To show the need for the services of Mr. Achitoff

16

and Mr. Morikawe, Plaintiffs merely state, without further support or elaboration,

that "Plaintiffs' attorneys in this case needed to possess, and did possess and

utilize, such specialized expertise." (Pls. Mem. Supp. Mot. 11.)  Similarly, to show

the need for the services of Mr. Mendelson and Mr. Jenkins, Plaintiffs simply

state–without providing any supporting evidence or citations to the record–that the

Court "acknowledged during the process of determining the scope of protective

orders [that] . . . the more technical aspects of the subject matter [were] difficult

even for an attorney with extensive experience," (Pls.' Mem. Supp. Mot. 12), and

that "there were times in this case when all parties and the Court were effectively

forced to rely on representations concerning certain scientific matters that

originated with Mr. Mendelson and/or Mr. Jenkins," (Pls.' Mem. Supp. Mot. 12).

These three sentences are the only references Plaintiffs make to the need for their

attorneys' distinctive skills in this litigation.  Without evidence or support for their

assertions, Plaintiffs have failed to meet their burden of showing that they meet the

second requirement of <u>Love</u>.

   In addition, Plaintiffs also fail to show that they meet <u>Love</u>'s third

requirement, that the attorneys' distinctive skills are "not . . . available elsewhere at

the statutory rate." <u>Love</u>, 924 F.2d at 1496.  Plaintiffs make only a minimal

showing that Mr. Achitoff's distinctive skills were not available at the statutory

17

rate.[3]  They make no such showing for Mr. Morikawe,[4] nor do they make such a showing for Mr. Jenkins and Mr. Mendelson.[5]  Plaintiffs have thus failed to show that they meet either the second or third requirement of <u>Love</u>.

The Special Master therefore FINDS that Plaintiffs have failed to show the existence of special factors warranting rates above that established by statute and RECOMMENDS that Plaintiffs be awarded the inflation-adjusted statutory rate of **$143 per hour** for all of attorney's  fees in this litigation.  The Special Master also FINDS the rate of $85 per hour to be reasonable for the law clerks' work, and RECOMMENDS that Plaintiffs be awarded **$85 per hour** for all law clerks' work in this litigation.

---

[3]Mr. Paul states that "[t]he rates [of] attorneys in Hawaii with experience and reputation comparable to Mr. Achitoff's are at least as high as the rate of $250 per hour being requested in this case for Mr. Achitoff's time, and often are higher."  (Pl.'s Reply Mem., Paul Decl. ¶ 4.)  This is somewhat contradicted, however, by the fact that Plaintiffs seek fees of only $160 per hour for Mr. Morikawe, who they imply possesses the same distinctive environmental litigation skills as Mr. Achitoff.

[4]With respect to Mr. Morikawe, Mr. Paul states only that the rate Mr. Morikawe is requesting is "at or below market rates for attorneys of comparable experience and reputation." (Pl.'s Reply Mem., Paul Decl. ¶ 5.) This does not in any way show that no attorneys of comparable skill were not available at the statutory rate.

[5]Mr. Achitoff states only that he is "not aware of any attorney in Hawaii with previous experience and expertise litigating issues concerning agricultural biotechnology, let alone any willing and able to represent public interest plaintiffs."  (Pls. Mem. Supp. Mot., Achitoff Decl. ¶ 5.)  Mr. Achitoff provides no evidence, however, as to whether other attorneys in Washington D.C. or elsewhere might have been available at the statutory rate.

B. <u>Hours Expended</u>

To determine reasonable attorney's fees, the appropriate hourly rates must be multiplied by the number of hours reasonably expended on the litigation. <u>See</u> <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983) (stating that in attorney's fee awards under 28 U.S.C. § 1988, "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate"). <u>Atkins v. Apfel</u>, 154 F.3d 986, 989 (9th Cir. 1998) (explicitly applying <u>Hensley</u>'s fee calculation framework to the EAJA). Hours that are "excessive, redundant, or otherwise unnecessary" are not reasonable. <u>Hensley</u>, 461 U.S. at 434. Where the hours expended are not properly documented, courts may also reduce the award accordingly. <u>Id.</u> at 433.

Here, Plaintiffs claim that they spent a total of **4,419.67** hours on this litigation. Plaintiffs' billing records show that these hours were spent by a total of six different attorneys and five law clerks: (1) Mr. Achitoff spent 2,114.2 hours on the principal litigation and an additional 158.1 hours on the litigation surrounding attorney's fees; (2) Mr. Morikawe spent 1,286.7 hours on the principal litigation and 65.9 hours on the attorney's fees litigation; (3) Mr. Jenkins spent 462.3 hours on the principal litigation; (4) Mr. Mendelson spent 125.4 hours on the principal litigation; (5) Ms. Sproat spent 18.5 hours on the principal litigation and 4.0 hours

on the attorney's fees litigation; (6) Mr. Henkin spent one hour on the principal litigation; and (7) five different law clerks spent a total of 183.57 hours on the principal litigation.   These hours reflect a voluntary reduction of 8.5% of the time spent on the principal litigation to account for hours that Mr. Achitoff "deemed excessive, redundant, or directed to tasks for which I decided plaintiffs would not seek an award . . . ." (Pls.' Mem. Supp. Mot., Achitoff Decl. ¶ 6.)  Mr. Achitoff then further reduced the total amount of fees requested by an additional 10% "to account for any additional inefficiencies." (Pls.' Mem. Supp. Mot., Achitoff Decl. ¶ 6.)

Defendants do not challenge the reasonableness of Plaintiffs' fees, nor do they challenge the documentation of these fees.  After reviewing Plaintiffs' billing records, the Special Master agrees and FINDS that Plaintiffs' billing records are reasonable.  The Special Master RECOMMENDS that Plaintiffs be awarded the statutory rate of $143 per hour for 4,236.1 hours of attorney's fees and $85 per hour for 183.57 law clerk hours, and that this total fee then be reduced by 10% to account for any additional inefficiencies.  This yields a base fee award of **$573,272.28**.[6]

---

[6]  $143/hour x 4,236.1 hours = $605,762.30
$85/hour x 183.57 hours = $15,603.45
$605,762.30 + $15,603.45 = $636,969.20
$636,969.20 x 90% = **$573,272.28**.

20

C.  Further Adjustments

Finally, the base fee award must be further adjusted based on "other considerations."  Hensley, 461 U.S. at 435.  There are two such other considerations in EAJA cases: (1) unreasonable protraction of the final resolution, and (2) the overall level of success in the case.

1.  Unreasonable Protraction

First, the EAJA allows courts to reduce a fee award "to the extent that the prevailing party during the course of the proceedings engaged in conduct which unduly and unreasonably protracted the  final resolution of the matter in controversy."  28 U.S.C. § 2412 (d)(1)(C).  Here, Defendants do not attempt to argue that Plaintiffs engaged in any unreasonable dilatory conduct.  While nearly every issue in this litigation was vigorously contested at every step, the Special Master FINDS that Plaintiffs' conduct did not "unduly and unreasonably protract[] the final resolution of the matter in controversy."  28 U.S.C. § 2412 (d)(1)(C).

2.  Level of Success

Second, courts must further reduce the fee award to properly reflect the plaintiff's level of success in the case.  Hensley, 461 U.S. at 435-436; see also Apfel, 154 F.3d at 989 (rejecting the position that Hensley's level of success analysis does not apply to the EAJA and holding that a district court "was required

to consider the results achieved on appeal" when determining the overall fee award).  In determining the plaintiff's level of success, the court must first determine "whether the claims upon which the plaintiff failed to prevail were related to the plaintiff's successful claims."  Schwarz v. Sec'y of Health & Human Servs., 73 F.3d 895, 901 (9th Cir. 1995).  Claims are related where they "involve a common core of facts" or where they are "based on related legal theories." Hensley, 461 U.S. at 434-35.  Claims are not related, however, where they are "distinctly different claims for relief that are based on different facts and legal theories."  Id.

Where the successful and unsuccessful claims are not related, then the fee award "may not include time expended on the unsuccessful claims."  Schwarz, 73 F.3d at 901.  If the successful and unsuccessful claims are related, however, then the court must next evaluate "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."  Id. (quoting Thorne v. City of El Segundo, 802 F.2d 1131, 1141 (9th Cir. 1986).  Full compensation for the unsuccessful claims is warranted where the plaintiff obtains "excellent results."  Id.

Here, Defendants argue that the fee award should be reduced to reflect Plaintiffs' level of success in this case.  Specifically, Defendants argue that

Plaintiffs should not be awarded fees for the hours they expended (1) fighting

Defendants' three procedural positions that Defendants believe were substantially

justified, (2) pursuing the nationwide ESA and NEPA claims (Claims 5 and 10) on

which APHIS prevailed, and (3) pursuing the PPA claim (Claim 11) on which

APHIS also prevailed.

The Special Master recommends that Plaintiffs' fees not be reduced

for the time that Plaintiffs spent defending against particular litigation phases in

which Defendants positions may have been substantially justified, namely,

Defendants' mootness, standing, and confidentiality positions.  Substantial

justification is a threshold issue and does not serve as a grounds for reducing fees

under the EAJA.  See Jean, 496 U.S. at 165.  Moreover, it is only because plaintiffs

prevailed on these issues that they were eventually able to prevail on the merits of

their case.  It would be anomalous and nonsensical to not award Plaintiffs fees for

these phases of the litigation on the grounds that the positions Defendants asserted

were reasonable and non-frivolous.

However, the Special Master does recommend that the Court reduce

Plaintiffs' fees for their lack of success on Claims 5 and 10.  Although these claims

were closely related to the claims on which Plaintiffs succeeded, Plaintiffs did not

achieve "excellent results" overall, and so Plaintiffs' award must be reduced.  See

Schwarz, 73 F.3d at 901.

The Special Master first finds that Claims 5 and 10 were closely related to their Claims 1-4 and 6-10.  Claims 5 and 10 are natural extensions of their other claims.  They take the same core of operative facts–the four permits APHIS issued in Hawaii–and argue that the legal theories the Court ultimately validated in Claims 1-4 and 6-10 extend beyond their particular applications to those four permits  to all of the agency's GEPPV permitting.  Claims 5 and 10 are not "distinctly different claims for relief that are based on different facts and legal theories,"  Hensley, 461 U.S. at 434, but are closely related to Claims 1-4 and 6-10.

The inquiry does not end there, however.  The Court may only award full compensation on related claims if the plaintiff obtained "excellent results." Schwarz, 73 F.3d at 901.  Plaintiffs' results here cannot be said to be "excellent." Plaintiffs undoubtedly sought, through this litigation, to influence *national* GEEPV permitting policy and rulemaking, not just regional or local permit practice. Moreover, Plaintiffs sought to require APHIS to analyze the environmental impacts of its GEEPV program as a whole, not just the environmental impacts of individual permits on a piecemeal basis.  In these respects, Plaintiffs failed. Plaintiffs achieved a level of legal success sufficient to render them the prevailing party, but not a level that can be deemed to be "excellent."

Defendants request that Plaintiffs' fee be reduced by 14% for Plaintiffs' lack of success on Claims 5 and 10.  In support of this number, Defendants vaguely point to Plaintiffs' billing records, but not to any particular entries which can be specifically tied to Claims 5 and 10.  Plaintiffs, on the other hand, guess that in the entire court file for this case, "discussion of claims five and ten is limited to perhaps a dozen pages," and argue that "very little" time was specifically spent on Claims 5 and 10.  (Pls. Reply Mem. 17.)

After a review of the billing records, and taking into account the relatedness of Claims 5 and 10, but Plaintiffs' failure to achieve excellent results in the litigation, the Special Master recommends that the Court reduce Plaintiffs' base fee award by 9% for failing to succeed on Claims 5 and 10.

Finally, the Special Master also recommends that the Court reduce Plaintiffs' fees for Plaintiffs' lack of success on Claim 11, Plaintiffs' PPA claim. Claim 11 alleged that APHIS failed to properly act on the rulemaking petition Plaintiffs submitted to APHIS in 2002.  At issue in Claim 11 were not the agency's actions in the four permits that were the subject of Claims 1-4 and 6-10, but the agency's actions–and inactions–regarding Plaintiffs' petition.  The operative facts and the legal theories alleged in Claim 11 were different than the operative facts and legal theories alleged in the claims on which Plaintiffs did succeed.  Thus,

25

Claim 11 is a "distinctly different claim[] for relief" <u>Hensley</u>, 461 U.S. at 434, and the Special Master finds that it is not related to the claims on which Plaintiff prevailed.

Defendants request that Plaintiffs' fee be reduced by 6% for their lack of success on Claim 11.  This is calculated as 1/3 of the 18% of total time that Plaintiffs spent challenging the Hawaii permits under NEPA, the ESA, and the PPA.  Plaintiffs do not provide an alternative for Claim 11 fee reduction.  The Special Master finds a 6% to be reasonable, and recommends that Plaintiffs' total fee award be reduced by an additional 6%.

Therefore, the Special Master RECOMMENDS that in total, Plaintiffs' base fee award be reduced by **15%** to reflect Plaintiffs' level of success in the case.  This yields a final attorney's fee award of **$487,281.44**[7]

## III.  OTHER EXPENSES AND COSTS

Plaintiffs also claim other expenses and costs associated with this litigation, as authorized under 28 U.S.C. § 24512(d)(1)(A) (authorizing an award of "expenses, in addition to any costs . . . ").  Here, Plaintiffs  request $11,762.03 in other expenses and costs for the principal litigation and $884.26 for the

---

[7]  $573,272.28 x 85% = $487,281.44

attorney's fees litigation, for a total request of $12,646.29.  This request is not challenged by Defendants.  After reviewing Plaintiffs list of expenses and costs, and the attached documentation, the Special RECOMMENDS that Plaintffs be awarded the **$12,646.29** they request in other expenses and costs.

## **CONCLUSION**

The Special Master FINDS that Plaintiffs are entitled to attorney's fees, costs, and other expenses under both the EAJA and the ESA.  As detailed above, the Special Master RECOMMENDS that Plaintiffs be awarded attorney's fees in the amount of $487,281.44 and costs and other expenses in the amount of $12,646.29.

IT IS SO FOUND AND RECOMMENDED.



/s/ Barry M. Kurren
United States Magistrate Judge
Dated: April 19, 2007

Center for Food Safety v. Johanns; SPECIAL MASTER'S REPORT RECOMMENDING THAT PLAINTIFFS' MOTION FOR ATTORNEY'S FEES BE GRANTED IN PART AND DENIED IN PART; CIV NO. 03-00621 JMS-BMK.